The first case on our call of the docket today, Tuesday, November 16, 2010, 930 a.m. is agenda number 11, case number 109485. William Carr, individually, on behalf of all other similarly situated plaintiff-appellee v. Gateway, Inc., defendant-appellant. Counsel, you may proceed. Thank you, Your Honors. And may it please the Court, the issue here today... Excuse me. Please, I may have missed it. Can you state your name for the record? I'm sorry. I got ahead of myself my first time in the Supreme Court here. My name is Stephen Hogan. I represent the appellant and defendant, Gateway, Inc. Well, that's fine, because it's only my second week sitting in this spot. The question before the Court today is, really, does Section 5 of the Federal Arbitration Act mean what it says, or is it largely a superfluous statute that Congress put in for some rare instance? And I think the answer to that is pretty straightforward, and I think it can be found in Section 5 itself. Section 5 provides for the circumstance that we have before us today. It requires that the courts name the arbitrator where the party's agreed method of naming the arbitrator has failed. Congress obviously anticipated that there would be circumstances where, for any number of reasons, including the unavailability of the person the parties agreed to name the arbitrator, where this would be an issue. And instead of leaving it to the contracts of the parties, Congress took it into its own hands, enacted Section 5, and said, when the agreed method fails, the courts shall name the arbitrator. So, Mr. Hogan, then you have a fundamental problem with the proposition that if the agreement at issue as to who the arbitrator was to be was an integral part of the agreement itself, that that would be controlling? Are you saying regardless of what the agreement provides, Section 5 would trump that? I believe that Section 5 does trump that, but I understand the problem that happens in that rare instance where the parties have agreed to arbitrate only because a particular arbitrator was the one that they thought would handle the case. And I think that there's room, and the cases have recognized that there's room in those circumstances to carve out an exception to the rule of Section 5, which is that... Is the fact that the penalty provision in the arbitration agreement in this case suggests that the designation of the NAF, is that one of those cases, or are you saying no? I do not believe so, and that's a fair question, because if you look at that as if it is a penalty provision for not proceeding in front of the NAF, I understand the concern that that might indicate that this is a circumstance where it's integral. I think that sentence shows exactly the opposite. I think that sentence shows that the parties anticipated that there may be times when we would be proceeding outside of the NAF, and it's critical that the penalty provision, so-called, it uses the word may, and it may, it's discretionary. It would be absurd for either party to ask the court to appoint an arbitrator in this case, and then ask that arbitrator to sanction the other side for not being in the NAF. That would be absurd. The other thing is, the only sanction that the penalty is, that the party who doesn't comply may be required under the contract, should the arbitrator so decide, to pay the cost of enforcing the contract. In this case, the contracting parties anticipated the NAF would name the arbitrator. The NAF is not available to do so. So that provision does not empower the arbitrator that the court would appoint to do anything, because there's no reason for the arbitrator to pay reasonable costs, no reasonable attorney's fees that could be incurred to enforce the contract under that penalty provision, under the excuse that, well, now here we are before an arbitrator that's not an NAF-appointed arbitrator. So I think a close look at it, it really is a point on our side of the equation, that this is not an integral part. The reason it mentions the NAF is everybody anticipated that that's who would name the arbitrator. But it's not a penalty that says only the NAF, and if for any reason we're outside the NAF, the provision fails. It leaves it to the discretion of the arbitrator. Counsel, what role does Gateways' intent as director of the agreement play into the question of whether this designation and this clause is an integral part of the arbitration agreement? What role does Gateways' intent play? I think it's twofold. One is under the question, the exception that the plaintiffs are urging, it would be their, as the people challenging the arbitration clause, it would be their burden to establish that it was Gateways' intent to arbitrate in the NAF before an arbitrator appointed by the NAF and nobody else. And on this record, the plaintiffs point strictly to the language in the contract, which doesn't say that, and so I don't think that they have carried their burden. The reason that I say that is that the language says that it will be exclusively and finally resolved by arbitration, exclusively and finally modify arbitration. It says it will be administered by the NAF, which administered is more of an ancillary logistical concern. It also says, except as otherwise provided, and the parties expressly agree to be bound by the Federal Arbitration Act, one section of which is Section 5, which says if the NAF is not available, the court shall name the arbitrator. So Gateways' intent is expressed in the contract, but it's contrary to the intent that the plaintiffs have urged. We have nothing in the record from the Carrs stating that the only reason they agreed to arbitrate is because it would be in the NAF. In fact, they have been silent, but their lawyers, presumably with their blessing, have argued from day one in the case until the NAF stopped doing consumer arbitrations, that the Carrs did not want to arbitrate in the NAF. It was the worst conceivable forum, according to their argument. Was there a recent case out of California Supreme Court that I think was argued before the U.S. Supreme Court recently that deals with this cause, this kind of clause? I believe you're referring to an AT&T case involving the question of whether a class bar, class action bar, is enforceable in an arbitration agreement. And it was argued, I believe, last Thursday. It does not deal with Section 5 directly. It would probably have an impact on this case at a later... It would probably have an impact on the parties in this case at a later point, but I don't think it impacts the decision before this court, which is under Section 5, does the court name an arbitrator, or are we in that circumstance where the entire arbitration agreement has to fail just because of this unanticipated loss of the person who is going to name the arbitrator? But I don't know if I've answered the question, but I believe that that case is separate issues and does not deal with Section 5, if it's the same case that I'm thinking of, Your Honor. To follow up on Justice Garmon's question a little bit, what do we look at in determining whether this is an integral part of the agreement, the contract only, or the intent of the parties? And you discussed or you alluded to gateways and to the cars. And is there a record to determine, or from which we can determine what the intent of the parties was? I think that the court looks first to the words of the contract. And I think that the words of this contract show that the parties anticipated that the NEF would name the arbitrator, but they also anticipated that there would be exceptions. It clearly says, except as otherwise provided below. I think the parties had the NEF in an administrative, a logistical role. The question is, was it integral or merely logistical? And they agreed that it would be administered by the NEF. They didn't name a specific arbitrator. They didn't require that a specific arbitrator hear the case. And they agreed that the Federal Arbitration Act would govern, which itself has Section 5 to cover this circumstance. That's the first place to look. The plaintiffs are the ones who are in here arguing that this is that rare case where Section 5 should not apply, because the intent of the parties to arbitrate in the NEF is integral. I think the first place to look then is for testimony from the plaintiffs that that, in fact, was true, and we have none of that in the record. In fact, they have argued the opposite. Then you would look to see if there is any indication that Gateway had an intent that the NEF was as important, if not more so, than the agreement to arbitrate. And we have nothing in this record that indicates that Gateway had anything in mind other than providing the customer with the fast, fair way to resolve $1,500 to $1,000 for arbitration. And that was done over a computer at the time, fast, fair result, through arbitration rather than going through what Gateway perceived as a more expensive litigation process. You won't find testimony from Gateway on the issue, primarily, I think, because it came up after oral argument at the appellate court. But on the other side of the coin, the plaintiffs are the ones who are urging that this exception to the rule of Section 5B, and so if they had needed to augment the record in that regard at the time to request it was back then, or at least before today. A couple of points is this exception that we talk about, the integral versus logistical, it finds its roots in the Iranian-American oil case, where the question was cited, whether an arbitration that they agreed would be in Iran could be moved to Iran, excuse me, moved to a different place by the court. Section 5 does not empower a court to move the site of an agreed site of arbitration. It does, however, empower the court to name an arbitrator when the agreed method has failed. That kind of exception has kind of carried through Zeckman. Brown recognized it, and I agree that there may be cases where Section 5 should not apply, but we don't need to decide that here because this is not one of those cases where a specific arbitrator was identified as perhaps the most knowledgeable person on Pentiums, and so any disputes over Pentiums would be decided by him. So the confusion comes when the courts lose track of the first aspect, which is Section 5 doesn't apply if the party's agreed method is still available. It just doesn't apply, not because it's for any other reason except that the agreed method has not failed. When the agreed method fails, however, Section 5 does apply, and I would submit that this exception that we're talking about, the integral versus ancillary logistical, is a heavy burden by the party who is trying to avoid the agreed contract term. The controlling law under, I believe, the Illinois cases, Supreme Court cases, Bush, that when it's a federal statute, then the Illinois courts will look to the federal circuit courts of appeal as governing law on construing the federal statute. And Brown and Reddam and Solomon are the three still cases that deal with it. The Brown case makes it clear that just words like very much like these is not enough to defeat Section 5. Reddam makes that clear, and Reddam points out that the Solomon court got confused by relying on a bunch of cases where the agreed method had not failed, so Section 5 did not apply. Solomon court didn't appreciate that, therefore said, well, Section 5 does not apply here, where the agreed method has failed. And that's where we get into this integral versus logistical area. But when you get back to it, Section 5 itself answers the question. Congress created an exception to the rule that says that the courts must live, must enforce only the party's contract agreed term. This is a special case, a special term where Congress saw that there would be times when the agreed method to name an arbitrator failed, and they said the policy here is to encourage and make sure that arbitration goes forward. So if that happens, we're going to empower the courts to do that. The plaintiffs have requested additional, that the court look at additional authority. And for the most part, I have no problem with that. But they have requested that the court look at a Fifth Circuit decision named Ranzi versus Tiarina. It's an unpublished decision, and they're correct that at least in the Circuit Courts of Appeal, you may cite to unpublished decisions. But under the Fifth Circuit's rule, and I believe it is 27.5.4, an unpublished decision is not precedent. So to the extent the court considers that, I don't, it is not precedent, it is therefore not binding on this court. That leaves us with Brown and Redham as the controlling authority, with Solomon being the one circuit that misunderstood. And I see my time is almost up. And if there's no further questions, I would turn it over to my opponent. Thank you, Mr. Hogan. Good morning, Your Honors. My name is Aaron Ziegler, and I'm here on behalf of the plaintiffs. Ziegler, let me start off with that California case. I think it's the same case that was before the U.S. Supreme Court last week. And I think in the California Supreme Court case, a term this kind of contract is unconscionable. Is that the same case that the U.S. Supreme Court heard last Wednesday? It was last Tuesday, I believe, Your Honor, and the case is Concepcion versus AT&T Mobility. Would that case impact upon a decision in this court? Not on the issue that's before the court now. The California Supreme Court in that case found that a class action waiver that was in a contract imposed by AT&T Mobility was unconscionable under California law and struck the provision. That's been taken up to the U.S. Supreme Court to determine whether or not the exception in the FAA on such other grounds at common law, which allows for courts to strike arbitration provisions as unconscionable, is preempted. There's no need to delay because of Concepcion. Should this court find that the selection of the NAF is not integral and that NAF can be substituted, the court would need to remand back to the Fifth District Appellate Court for a decision on the unconscionability grounds. At that time, the Fifth District would then have to consider the U.S. Supreme Court's decision in Concepcion. However, I don't think that's going to be necessary because I think what we have here is a clear case where a drafter could not do much more to find or to designate a particular body as integral than what's been done here. We have both naming of the forum, selection of the forum's rules, and then a penalty provision that says if you try to go anywhere else, you're going to have to pay our fees in making you go to the NAF. When you look at the case law, I think it is unquestionable. The question here today is not, I think, how Mr. Hogan phrased it, whether or not Section 5 is applicable. The question is whether Section 4 and the cases interpreting Section 5 and Section 4 are to be ignored. Section 4 of the FAA requires courts to only enforce arbitration clauses to the extent that the contract calls for. And you saw this very recently in the U.S. Supreme Court case Stolt-Nielsen, where the U.S. Supreme Court found that they could not enforce a class action in arbitration because the contract was silent on that. Section 4 is the section of the FAA that requires that this is a matter of contract, that we can't go beyond that. Section 5 cannot be read without consideration of Section 4, like I said, and as a result, courts have limited Section 5 to the instances that Mr. Hogan discussed. Section 5 has been limited only to those instances where the court can say with assurance that the selection, the foreign selection clause, was not integral to the contract. And therefore, the court can enforce the contract someplace else without doing harm to the contract. How do we decide that? How do you decide that? Well, that's a very good question, Your Honor, and it's also a question that's been addressed by the Circuit Courts of Appeal and the Federal Courts, which Gateway contends. I mean, do we look to the contract? This is from the Fifth Circuit Court of Appeals case in Ramsey, which was decided a month and a half ago, and it says, in order to determine whether the designation of the NAF as the sole arbitration form is an integral part of the arbitration agreement, the court must employ the rules of contract construction to determine the intent of the parties. Another case, Stewart. It is firmly settled that the intent of the parties to a written contract is contained in the writing itself. When the words of a contract are clear and unambiguous, we are to determine what the parties intended by looking only at the express language of the agreement. Illinois law is the same. Anytime you have a written agreement and you're trying to determine the intent of the parties, you look to the contract itself. You do not go to extrinsic evidence unless there is an ambiguity in the contract itself. Here, there's no ambiguity. Counsel, before you get into there being no ambiguity, opposing counsel referenced the same penalty clause in response to my question and saying it actually supports his position. If, indeed, this court finds, contrary to your position, that the contract is clear and finding ambiguity, do you want to address, or what, if any, import does the fact that opposing counsel mentioned that the attorneys in this case indicated that this particular arbitration clause regarding NAF put them in the worst position and, therefore, their intent would never be to only have the NAF be the arbitrators? I would disagree with that characterization, Your Honor. We didn't argue that the NAF was the worst possible forum. What we did was we looked at the arbitration agreement and opposed the arbitration agreement as unconscionable. We opposed it on many reasons because of the NAF. As you can see, it's mentioned numerous times in the arbitration clause, the rules and the form itself. I mean, obviously, it's been by consent decree not allowed to do consumer arbitrations anymore. That was a real issue for the plaintiffs in the trial court and one that was pointed out. We didn't say we'll go anywhere but the NAF. By the same token, Gateway never once offered, since the NAF is so bad and you have such a hard time with that, we'll go to AAA or we'll go to JAMS. There was never such an agreement. There was never such an offer. Counsel, but isn't it true that here the NAF did not make itself unavailable until the case was on review? That's true, Your Honor. One of the issues that's raised in the briefs is the length of time that this case has been pending. One of the things that the plaintiffs were doing below was third-party discovery with the NAF, which required depositions and subpoenas and such of former arbitrators. Gateway resisted that discovery the entire time and said, you know, all this is irrelevant. The NAF is fair and great and wonderful and never once said, well, let's just cut to the chase. All we want is arbitration. We don't care where. That's not what they did. What they did was they said, this is our contract and it needs to be enforced. And as a matter of fact, they took the position both in the trial court and in the appellate court that this was a gateway dispute. That's an unfortunately name for this case. But what that means is that what the court was allowed to decide under Section 4 was only whether the contract was entered into freely and not unconscionable. And if it is entered into freely, then the court had to compel adherence with the contract as it was written. Gateway argued in the trial court and in the appellate court originally that that's as far as the court could go. They never argued for partial enforcement of the contract. We've attacked nearly every line in the contract. So if it was really only gateway's intent just to arbitrate, they could say fine, strike all the provisions that plaintiffs don't like. But at the trial court level, I mean, NAF was still, you know. Yes, they were. And the contract was only looked to. You agree that you only looked to the contract at the time. Yes. And that was this court's holding in Kinkle. So even if the NAF isn't around and this court remands back for consideration of the unconscionability issue, the appellate court would have to consider whether the inclusion of the NAF is unconscionable. And that's this court's holding in Kinkle. I would like to, let's turn back to the test. The test on whether or not it's integral or not. There are a number of federal circuit court decisions that address this issue. And in applying the test, they reach different conclusions based on different facts. That's how every test works. There are some courts that have evaluated clauses that name multiple possible forms. You can go to NAF, you can go to AAA, you can go to JAMS. There are other cases where the court has said you pick one, I'll pick one, and then they'll pick a third. Those are not integral. There are other cases where the arbitration provision specifies the rules only. We will arbitrate under the rules of the AAA. We will arbitrate under the rules of the National Arbitration Forum or the NASD. The cases looking at those instances are split, but for the most part have found that the rules are not enough. However, the cases where they have both the rules and the forum, where they say it will be administered by Forum X and we will follow the rules. The cases looking at those instances, like we have here, the overwhelming weight of authority finds that on the terms of those contracts, that that provision is integral to the contract. The cases that Gateway points to, Rettum, Brown, and Zekman, all three of those cases were cases where only the rules were specified. In those cases, the clauses did not specify the particular forum, and I think that that's something that's very important. The cases that deal with both the rules and the forum are National Iranian Oil, Conn v. Dell, RANSI. Those are the federal cases that deal with both of those instances. In this case, we have both the rules and we have the forum, and then we have the penalty provision that goes much further than any of these other cases. As I said earlier, the Fifth Circuit Court of Appeals addressed this a month and a half ago in RANSI. Is that presidential? It is, Your Honor. It's presidential under the Federal Rules of Appellate Procedure. As my opponent mentioned, it is designated as unpublished. But a couple of years ago, one of the first things that Justice Roberts did once he came in as the Chief Justice was to amend the Federal Rules of Appellate Procedure, so that unpublished in the Federal Rules doesn't mean not presidential. So as far as the U.S. Supreme Court is concerned, the Fifth Circuit has spoken on this, and they found that when you name the NAF as your forum and you say you will arbitrate under the NAF rules, that's integral to the contract and that clause cannot be enforced. Something else that's important here. We heard quite a bit about who bears the burden here. And in Gateway's brief, they mention a number of cases as putting the burden on the plaintiffs. But unfortunately, in reading those cases, I haven't found those same references. In my review of the cases, I've found the only case that allocates a burden is the National Iranian Oil case. And in the National Iranian Oil case, the court states that because it's National Iranian Oil, and the actual facts of that case are very important. In National Iranian Oil, the National Iranian Oil had $283 million worth of oil stolen from it. And they had an arbitration clause with the distributor of that oil, which required that all disputes be resolved in Iran. But when they came and tried to enforce that arbitration provision, the defendants who owed them $283 million did not want to go to Iran. They turned to the federal courts, and National Iranian Oil there said, fine, don't send us to Iran, we don't care, send us to Dallas, we'll go there. And the Fifth Circuit Court of Appeals said they could not do that, that National Iranian Oil, as the proponent of striking the forum selection clause, bore the burden. And therefore, it's National Iranian Oil's burden to show that the forum selection clause in that instance was only ancillary and not integral to the contract. And because National Iranian Oil, who drafted the contract, selected the rules and the forum, it was integral to the contract, and therefore, even though they're out $283 million, the court would not require them to arbitrate or litigate anywhere. I think that's a very, very important case here. Now, my opponent also tries to distinguish that case on the fact that it deals with situs and not a selection of a forum. However, every single case that's been cited to you today, whether it's Redham or Henry Solomon or Ramsey or Brown, every single one of those cases cites the National Iranian Oil. And as a matter of fact, the Ramsey case of less than a month and a half ago explicitly endorses that reasoning and says that we agree with the Second Circuit's enforcement of National Iranian Oil and Henry Solomon, endorses both those cases and finds that in a case where the National Arbitration Forum is selected and its rules are selected, that it's integral and cannot be enforced. Do we need to worry about interpreting or concern ourselves with interpreting Section 5 in the language about if for any other reason there shall be a lapse in the naming of the arbitrator and so forth? I don't think so, Your Honor, and the reason being is because, as Gateway pointed out, this court has decided that federal law on this issue should control, and the courts have already interpreted that, both with National Iranian Oil and Henry Solomon. Henry Solomon is really the case that goes the furthest with that, and it looks to what does lapse mean and has several paragraphs on what it believes to lapse means. And really what that means are examples like I gave earlier where the arbitration clause says the plaintiff will pick one arbitrator, the defendant will pick one arbitrator, and then each of those arbitrators will pick a third. And for whatever reason, those two arbitrators can't pick a third. Well, then you go to the court because there's a lapse, and the court can fill the gap. That's completely in line with the contract. What you have here is we will use the NAF, we will use the NAF rules. The NAF rules say only the NAF can use its rules. And if you don't go there, you've got to pay my fees. Doesn't that mean that there's a lapse then? You know, you can interpret that as a lapse in Section 5 would apply? Not under National Iranian Oil or RANSI. They would say that the contract is the contract you bargained for. If it failed because you chose that forum, that's the failure of the contract and the entire contract fails, or the entire arbitration provision under both National Iranian Oil, RANSI, and Henry Solomon. Were there any other questions? I'll thank you for your time. Thank you, Mr. Ziegler. Mr. Hogan. Thank you, Your Honors. I would like to address three primary points, and I'll do so quickly. The first point that the plaintiffs urged was that Section 4 should control the decision here and not Section 5. I restate, he didn't say it exactly that way, but that's really the message I think they're giving. And I think that is a very important point because that's where a lot of these courts that get confused get it wrong. Section 4 does say that the court should enforce the agreements to arbitrate according to their terms. And many of the cases pick up on that language, including the cases that the plaintiff has cited to you today. What they don't appreciate is that Congress enacted Section 5, which follows Section 4 immediately, as a very specific statute dealing with a very specific circumstance. And that is where the agreed means of naming an arbitrator has failed, our case here. And in that case, Congress decided that the courts would be empowered to and shall name the arbitrator, regardless of, you know, because the party's agreed method has failed. So Section 5 actually says the court has to do something the parties didn't agree to, because it only comes up when that fails. The other question is the recent Ramsey decision, Fifth Circuit decision. The plaintiffs attributed it to the 10th in their briefing. I misspoke from memory, but the Fifth Circuit Court of Appeal Rule 47.5.4 and 47.5.3 are the ones that the court should look at to determine whether or not this case is precedential. Federal Rules of Appellate Procedure 32.1 permits anybody in the federal appellate courts to cite any decision, published, unpublished. They got tired of deciding what could be cited and what couldn't. But the Fifth Circuit has determined that cases like Ramsey decided after January 1, 2007, that they have deemed unpublished are not precedent. So I don't, as I see it, we're still with the three cases, Brown, Redham, and the Second Circuit's decision in Solomon, as the federal precedent. The final point, national Iranian oil figured prominently in my opponent's argument. And I encourage the court to look at that case, because the issue there was whether the court could have the power to substitute its own determination of where the arbitration would occur, citus. They had agreed to do it in Iran. There were all sorts of good reasons to move it out of Iran. The court correctly held that the FAA does not have a Section 5.4 inconvenience citus. If the parties agreed to do it in Iran, the court couldn't substitute its judgment. That is a very different circumstance from what we have here. Loose use of the word forum leads to equating citus to what we have here, which is a service provider who the parties anticipated would name the arbitrator. Section 5 empowers a court to step in when that agreed method fails. Section 5 was not discussed, nor was it available to the parties in national Iranian oil, because the issue there was not who was going to name the arbitrator. It was, we can't get to Iran, or we won't go there. We want the court to move it to a more neutral citus. The confusion goes forward from that case on through even the cases I rely on, Brown and Redham. Section 5 itself does not recognize an exception. If the agreed method fails, it says the court shall name the arbitrator. I agree that there might be a case out there where it is so obvious that it would be inherently wrong to do that, that this integral versus merely ancillary analysis becomes critical. This is not a case. We're looking strictly at the words of the contract, because the plaintiff has brought no other evidence forward of what was integral to the parties. And when you look strictly at those words, it cannot be said with positive assurance that the parties agreed to arbitrate only if it would be in the NEF. Mr. Ziegler got the burden switched. He claims the law is that you only bring Section 5 in if it can be said with positive assurance that it should apply. The case law is directly contrary. Section 5 applies, and if an opponent wants to defeat it, then he has to come in and clearly show that it's defeated. Thank you very much for your time, your patience, and accepting the case for review. Thank you, Mr. Hogan.